Case number 23-16-71 Dana Nessel v. Enbridge Energy LP et al. Oral arguments not to exceed 15 minutes per side. Mr. Bok, you may proceed for the appellant. Good afternoon. Good afternoon, Your Honors. Dan Bok, may it please the Court. Dan Bok on behalf of Michigan Attorney General Dana Nessel. I'd like to reserve three minutes of my time for rebuttal. Very well. Your Honors, this case must be remanded to state court for three reasons. First, Enbridge failed to comply with the mandatory statutory removal deadline. Second, Enbridge constructively waived its right to remove this case. And third, due to a lack of federal subject matter jurisdiction. If the Attorney General prevails on any of these points, the case must be remanded to state court. As to the first point, untimely removal. As the Court's aware, 28 U.S.C. Section 1446b-1 requires that a notice of removal shall be filed within 30 days of receipt of the complaint. Enbridge filed its notice of removal in this case 887 days after it received the complaint. Can I ask, because their argument is right that the Barrera case says they don't have to do anything until they receive unambiguous information. And they claim the order is unambiguous information. I mean, what is unambiguous information mean, first of all? And then why, what's wrong with their argument that the order qualifies? Certainly, Your Honor, there are several things that are wrong with their order. What Enbridge actually argued in its brief is that the 30-day clock does not begin running until it is certain that a case is unambiguously removable. And that is not the language. The language of Barrera is solid and unambiguous information. Now, this is distinguishable from Barrera for a couple of reasons. First, as this Court noted in Barrera, the complaint in that case contained allegations that were sparse and vague. That was an artful pleading case where the plaintiff had essentially concealed a federal court claim by passing it off as a state court claim. It was FICA or whatever, but do they have to, I mean, does it have to be an artful pleading case? Because that seems to restrict it more than the statutory language provides. No, Your Honor, it doesn't have to be an artful pleading case, but the issue is that you look at the face of the complaint, and as set forth in 1446A, a case is removable if the defendant can file a notice of removal without incurring sanctions under Rule 11. Enbridge admits in its brief that it believed, or it had colorable reason to believe, there was federal subject matter jurisdiction. I think that's a really good argument. I just struggle squaring it with the unambiguous language. Does that make sense? Certainly. In other words, our language, I admit to you, it's case language versus statutory. It just says ascertain, which seems to support your argument. Ascertain may be in the third section or whatever, but in any event, so how do you square those two with what I think is a really good argument that once you have a good faith basis, you should remove? Certainly, Your Honor. Now, two things. First of all, there was nothing unambiguous about the Attorney General's complaint. The Attorney General's complaint, under the well-pleaded complaint rule, alleges purely state law claims. There was nothing ambiguous about it. That's similar to Barrera. Yes, except the Attorney General's claims are not federal law claims couched as state law claims. It was three state law causes of action. The public trust doctrine, state common law. Public nuisance, state common law. The Michigan Environmental Protection Act, a state statute. And we've cited cases that says all three of those causes of action are matters of state law. So are you saying that the solid and unambiguous really goes to facts? Not to evade whether the law might come out one way or the other, given the facts? It goes to the facts and law that are pled on the face of the complaint, Your Honor. Does the law have to be unambiguous? If I'm not sure I have a good removal theory, I'm not ready to test it out yet? The origin of that language seems odd to me. Barrera cites a case called Holston, I think, for that language. Holston was a case about whether defendant-only documents would satisfy 1446 or whatever, right? So it makes sense to me that if you're saying, well, if the defendant is holding the document, it's got to be solid and unambiguous. And then that could be the origin of that language. But we got rid of that requirement in Grazer, as I recall. So I'm not sure where that leaves the solid and unambiguous. I don't know. That would be an argument you could make, I suppose. But I'm just curious whether that solid and unambiguous is limited to kind of a fact situation as opposed to the law, which will be who knows. I mean, you're always going to have cases at the edge of the law. And I can't imagine somebody would say, well, I didn't remove because I wasn't quite sure how the law was going to come out. And then a new case comes out and I say, okay. Isn't that the case here, though, that they say they didn't know how the law was going to come out until the denial of the remand was issued in the governor's case? That's their argument, isn't it? Yes, Your Honor. That is what they say. And I would note that the solid and unambiguous information could be either fact or law, depending on the basis for removal. Enbridge's basis for removal here is a legal basis. Give me an example when it could be law. I mean, that's their argument.  I'm with Judge Nalbini. I don't understand when it could be law. I don't know he was saying that. But I'm trying to figure it out. And I'm surely going to ask your friend on the other side. Certainly, Your Honor. I would say Barrera had a legal component to it because it was a case that arose under federal law. And so it was a combination of fact and law, I would submit. But what's important to note here... Barrera is the FICA case, right? Yes. Where he's not sure whether the withholding claim that you're making is a FICA claim. Certainly. Was there anything unclear about what the law was? I mean, if in fact you were saying you withheld your share of FICA from my paycheck, I mean, that was not... there was nothing ambiguous about that, right? I mean... Certainly, Judge Nalbini. And I'm just saying that the legal issue was because it arose under a federal law that was factually concealed, I think there was a legal component. But what I would note... to whether this doctrine is kind of limited to artful pleading or not, then. Artful pleading or certainly situations where the nature of the claims change. We have plenty of cases that were diversity cases where non-diverse defendants were dismissed and the case became removable after it wasn't originally, or where the plaintiff changed... I guess my question is, and I'm not sure why... well, in a Grable situation, it seems to me it's always going to be kind of complicated and at the edges of whether it's proper or not. So when am I going to have solid and unambiguous information that I can remove a Grable case? Certainly, Your Honor. And that is one of the problems that we identified in our reply with Enbridge's approach here. Enbridge acknowledges that Grable is often inherently uncertain, and it raises the prospect that the 30-day removal... So why isn't... I'm sorry, we're interrupting, but why isn't the line then legal versus fact? It could very well be, Your Honor. I think the issue here... You shouldn't fight him on that. I'm sorry? You should not fight him on that. I will concede that point, but the fact of the matter is, based on the law and facts of this case, Enbridge's clock began running when they were served with the complaint. And we've provided the chart on pages 49 to 52 of our brief that shows again and again, Enbridge not only ascertained its basis for removal, but actually raised them as preemption defenses. Can I ask you about a separate issue, which is the equitable tolling that the district court... Yes. So Holland v. Florida, are you familiar with the Supreme Court case Holland v. Florida? No, Your Honor. Okay. I'll just tell you what it says. It says when we have a non-jurisdictional time limit, there's a presumption that equitable tolling would apply. Why isn't that applicable here? Well, here, Your Honor, we have the statutory language, the mandatory shall. We have ample case law that says in this circuit, this is a mandatory procedural rule that must be strictly applied unless waived by the plaintiff. And moreover, I direct the court to the cases that are very clear that say all doubts must be resolved against removal, first of all, in favor of a man. Right. So you've got two cannons kind of running head into each other, right? Because go ahead. Well, I would say in this case, I think it's clear that Enbridge missed its timeline here or missed its deadline. To the extent that there is any ambiguity or any question, that ambiguity must be resolved in favor of a man to state court. I agree wholeheartedly, but the equitable tolling is an exception to that. And that's what I'm trying to get at, right? I don't think the equitable tolling, I mean, here I think the equities are clear. The attorney general, I think the district court's weighing of the equities was incorrect as we set forth in our brief. I think as we've set forth Enbridge, the courts where litigated this case extensively in state court, got a significant adverse ruling where the state court shut down the pipelines for actually about two months in 2020. And then while we'd been waiting for four months for a decision on cross motions for summary disposition, Enbridge used the governor's later filed case as a vehicle to flee to federal court. All the attorney general has done here is move for remand. And the standard for whether Enbridge can shoehorn this late removal into 1446B3, which is where the solid and unambiguous information comes in, Enbridge fails all three elements of the test for that standard. First and foremost, 1446B3 only applies if the case stated by the initial pleading is not removable. Enbridge admits in its brief that it believes it had colorable arguments to remove the case at the time it was filed. Enbridge then implies this inaccurate certain unambiguously removable standard, which I will add, the Eighth Circuit. I take it the fact that the governor's case, there was a denial of a motion to remand. And it's not that different than this one. So it was removable, right? It turns out post hoc that it was removable because the other one was removable. Yes, Your Honor. And Enbridge was able to remove that case within 30 days of filing, but not this one, even though the legal issues were substantially similar. I think the Eighth Circuit decision in Dahl v. R.J. Reynolds Corporation is exactly on point. The Eighth Circuit expressly rejected exactly the same tactic by R.J. Reynolds and expressly rejected the identical argument that the root word of ascertain is certain. And I would note that this court favorably quoted. Do you think Dahl was inconsistent with Doe and Green? Green. No, Judge Nelbandian, it was not. In fact, the Eighth Circuit noted that in Doe and Green, not only were the parties, the defendant was the same, it had timely removed and lost, the cases were remanded, and then subsequently an appellate decision from a higher court in the same judicial hierarchy changed the standard or clarified that those motions should have been granted. Had Enbridge filed its notice of removal within 30 days of being served with the initial complaint and then a higher court in the same hierarchy issued a different ruling, it might have an argument based on Doe and Green, but not here. So it would have to have had a ruling from us, essentially. Yes, Your Honor. To prove the theory in a case where they were the defendant, right? Essentially, yes, Your Honor. In fact, that was what Green held, or I'm sorry, that was what Dahl held, and in Barrera, page 968, this court favorably quoted Dahl and noted that in Barrera, the amended pleading order or other paper on which the defendant relied arose from within the same case and not an external case, not a non-binding district court opinion in another case with no force to impact the removability of this case. Order means an order in this case. If it doesn't mean that, it would have to meet the test. You would say the test in Doe, the three-part test, it's got to be a superior court, it's got to be the same defendant, that would be the test to look at? Yes, Your Honor, and that was the holding in Dahl, and this court, as I mentioned, favorably referenced that holding in Barrera. And the reason being here, and I apologize, I'm over my time, but if I can answer Your Honor's question, the reason is quite clear. This is a non-binding district court order from another case that has no force on the removability of this case, and it's been rendered null and void because the complaint in that matter was voluntarily withdrawn. So all interlocutory orders are without force. And I will note that voluntary withdrawal occurred before Enbridge removed this case. Simply put, the idea that Enbridge didn't know this case was removable until it prevailed on a motion to remand after it removed a virtually identical case does not pass the laugh test. It's not a tenable argument. Judge LaVar, do you have any further questions on the 30-day removable? No. Do you, Judge LaVar? All right, I would like you to spend a few minutes on the other significant question on federal jurisdiction. Yes, Your Honor. Simply put, there's no federal jurisdiction over this case. Based on the well-pleaded complaint rule, the Attorney General raised essentially three claims, public trust doctrine, which the Supreme Court has clarified as a matter governed by state common law, public nuisance, another state common law doctrine, as the Third Circuit found in City of Hoboken v. Chevron, and the Michigan Environmental Protection Act, a state regulatory statute, which this court held. We cited that case in our brief, but the Amici fellow states cited it specifically for the proposition, I'm sorry, the case of Her Majesty the Queen in the Right of the Province of Ontario v. City of Detroit. This court expressly held that Michigan Environmental Protection Act claims are not removable federal questions. The only federal issues in this case are ordinary preemption defenses that Enbridge raises, and at the state court, it raised them and called them what they are, preemption defenses. Where do you think the preemption line kind of ends and the grable line starts? Because it seems blurry right at that line. For example, to vindicate the public trust claim, it seems to me you have to decide if Michigan has ownership, and to do that, wouldn't the federal statute come into play? No, Your Honor. Interestingly enough, states' ownership of their submerged bottomlands is actually a constitutional doctrine. Ownership of submerged bottomlands beneath navigable waters passed to the states upon their admission to the union under the constitutional equal footing doctrine. The Federal Submerged Lands Act, and the amici fellow states went into more detail on this, but I can provide the citation. The Federal Submerged Lands Act expressly says that states own their bottomlands and have the right to convey them. I can't remember it, and I'm sorry. What's the exception in the Federal Submerged Lands Act? There is a reservation of rights that the Supreme Court has held twice in Douglas v. Seacoast Products, and I believe it was Corvallis Sand and Gravel v. Oregon, that this is a reservation of rights for the federal government to notify states that it may in the future pass statutes that burden state-owned bottomlands. But it itself is not a burden of rights, and there's no such statute at issue here. Are you talking about 1314A? I believe that's correct, Your Honor. I apologize. I'm looking for the citation. I think that is right. I mean, it's a fairly broad reservation. It retains all navigational servitude and rights, et cetera, et cetera, for constitutional purposes of commerce and also international affairs. And then we've got a treaty, you know, no public authority in territory shall institute any measures. I mean, the combination of the two of them seem like they're kind of working in favor of jurisdiction, I think. Respectfully, Your Honor, I would disagree for two reasons. First of all, the Federal Submerged Lands Act at 1311A, it's 43 U.S.C. 1311A, expressly says states have the right and power to manage, administer, lease, develop, and use the said lands and natural resources all in accordance with applicable state law. This case concerns a lease of state-owned bottomlands. It falls directly in that provision. The lease would still be subject to whatever the reservation is, right? And yet there is no federal reservation here. So the federal government has reserved the rights, and I would direct Your Honor to – You're saying that there's nothing enabling, that the reservation here, do you need some enabling legislation to specifically carry out the reservation? Yes, Your Honor. Why wouldn't the treaty satisfy that? Well, and real quick, before I answer that question, Your Honor, if I can direct the Court's attention to Justice Rehnquist's concurrence in the case of Douglas v. Seacoast Products, which we cited in our reply brief. He expressly stated that this reservation of rights is simply a notice to states that the federal government may exercise its authority to burden their bottomlands in the future. Now, with regard to the treaty, there are several reasons why that does not apply, but I'll try to be as quick as I can. First and foremost, Article IV of the treaty completely defeats Enbridge's treaty-based arguments. Article IV expressly reserves the right of public authorities to enforce nondiscriminatory regulations, rules, agreements, and other things, and it says that applies notwithstanding Article II of the treaty. Article II is what Enbridge relies on, that says public authorities may not impede the flow of hydrocarbons, but Article IV is a savings clause that expressly preserves this type of action. But more importantly, even before we get to that, it's important to note that the treaty is an ordinary preemption defense, the type of defense that state courts are entrusted to litigate and to adjudicate, I should say, all the time. The only way that the treaty can get Enbridge into federal court is if it effectuates complete preemption of the state causes of action, which it clearly does not do. I would direct the court, and this was cited by the- They're not arguing complete preemption. Well, interestingly, and I apologize, if I can respond to Judge Thapar briefly, Enbridge does not use the words complete preemption. It says these are necessary elements of the state claim under Grable. Now, simply put, that's nonsense. Between the Attorney General and the amici states and amicus for love of water, there's six or seven state public trust actions cited, and I can name some of them. International Gypsum, Collins v. Gerhart, Glass v. Geckel, plus, of course, the seminal 1892 U.S. Supreme Court case of Illinois Central Railroad Company v. State of Illinois. Notably, not one of them says anything about needing to prevail on something related to the Federal Submerged Lands Act or any aspect of federal law in order to prevail on a public trust claim. The same is true of public nuisance, and the same is true of MEPA, the Michigan Environmental Protection Act. I think it's just important to note, this is, at the end of the day, exactly like this court's decision in Columbia Gas Transmission Company v. Singh. That was a natural gas pipeline easement dispute, and this court expressly held that pipeline easement disputes are matters of state property law and contract law, and they are not the types of claims that get you into court based on grable. Sorry. Can I ask the U.S. for its view in this case? Your Honor, the U.S. has known about this case for five years and has remained completely silent. I'll also note that the federal government of Canada filed an amicus brief in the district court but filed nothing in this appeal, and importantly, it also merits mentioning with the treaty, that's an ordinary preemption defense, and I think this is an important part. As I was saying, Enbridge has not pled complete preemption, but because their arguments fail under grable, the only way, you know, they've referenced the federal common law of foreign affairs, right? The only way that a federal preemption defense, if it isn't a necessary element of the complaint, the only way that can get them into federal court is if it effectuates complete preemption, and so I want to make clear that should the court consider these to be complete preemption arguments, they fail. The U.S. Supreme Court case or Supreme Court- Is that forfeitable or not? So forfeitable meaning the plaintiff- Can they forfeit the argument that, not you, them, can't they forfeit the argument that it's completely preempted? Certainly they can, and I would argue that they have. My concern is that Enbridge's somewhat brief invocation of the federal common law of foreign affairs in its brief on appeal sounds an awful lot like a complete preemption argument. It doesn't sound like grable because they're not saying that that's a necessary element of the attorney general's complaint, and I would note that all of the decisions that they rely on in support of jurisdiction under foreign affairs, these are all decades old, out of circuit, sharply criticized, and possibly superseded. In our reply, we directed the court to the Ninth Circuit's decision written by Judge Kaczynski in Patrickson v. Dole Foods, and there, Judge Kaczynski, or the Ninth Circuit, expressly rejected the notion that you can have removal based on an exception to the well-pleaded complaint rule arising from the federal common law of foreign affairs because he noted he called it what it is. It is the act of courts creating jurisdiction for themselves where Congress has not provided any, and I think when we look at the treaty, the treaty expressly reserves exactly this type of action. And it cannot effectuate complete preemption. In fact, all of the foreign affairs cases cited by Enbridge predate a case cited by the amici states, the Supreme Court 2003 decision in Beneficial National Bank v. Anderson, which is where, for the first time, the Supreme Court really, you know, there were plenty of complete preemption cases, but prior to that, there was nothing that actually set out the test. And they said, and this court has adopted that. Is the foreign affairs argument at issue in the climate change cases where universally the federal courts have said remanded them, I think? Off the top of my head, Your Honor, I apologize. I don't know if those included foreign affairs or just all of the other jurisdictional arguments Enbridge raises, but Your Honor brings up a good point. For the most part, Enbridge's arguments on jurisdiction are rehashings of those cases, which have been, as you note, Judge Nalbandian, rejected by the 1st, 3rd, 4th, 8th, and 10th circuits. I do not recall whether foreign affairs was implicated there, but I will note for the court, there have been two district courts that expressly considered and rejected the notion that the 1977 Transit Treaty preempts causes of action such as this. The Western District of Wisconsin did that in the Bad River Band case, which we cited in our brief, and the District of Maine did that in the City of Portland case. Those were both 1977 Transit Pipeline Treaty removal actions, or not removal actions, I apologize, but where that was raised as a preemption defense, and those courts held that that argument didn't even win as an ordinary preemption defense. Here's the sentence that led me to think they were arguing this under Grable. You'll similarly hear the dispute centers on the 1977 Transit Treaty ratified, plus PHMSA's exclusive jurisdiction to regulate pipeline safety. That is more than sufficient federal involvement to render the federal issues in this case substantial. Respectfully, Your Honor, those are simply just incorrect arguments. With regard to, Your Honor referenced PHMSA, the Pipeline Hazardous Safety Materials Administration. The Pipeline Safety Act, which is the statute that gives it its authority here, includes an express non-preemption clause that says the routing and location of interstate oil pipelines is left to the states. The federal government has no authority over it. But moreover, the title of that section is preemption. Enbridge relies on the title of a section of the statute called preemption to say, not that it's making a preemption defense, but rather that this is a necessary element of the state's claims. That's preposterous. It's a preemption defense, and it's a losing preemption defense because the act contains a non-preemption clause for the routing and location of interstate oil pipelines, which is what's at issue here, an easement authorizing the routing and location of an interstate oil pipeline. Is it really about the routing, or is it really about safety? Well, Your Honor. Really, it's a safety argument, isn't it? Well, what the easement authorizes is the location of the pipelines on a stretch of Great Lakes submerged lands. Now, when we talk about- But you're concerned about the location because it's not safe, because it's going to get banked into by anchors from boats or whatever. Yes, and I would note, for Your Honor, that our amici fellow states cited a series of district court cases that upheld local zoning setback requirements that were safety issues on the grounds that even if you have environmental concerns, it's still a routing and location issue. A pipeline safety standard is what PHMSA administers. Those are technical standards. The Attorney General isn't trying to impose any pipeline strength requirements, any things like that. This is pure routing and location. That's what the easement is. That's what this court held about the gas pipeline easement in Columbia Gas Transmission Company versus Singh. And I would also note, with regard to the treaty, first and foremost, as I said a moment ago, two district courts have held that it's not even a successful ordinary preemption defense, but it is, simply put, a preemption defense. In its brief, Enbridge says the treaty, as well as the other two federal laws it cites, Federal Submerged Lands Act, Pipeline Safety Act, prohibit the state law claims brought by the Attorney General. And yet, somehow, these are not preemption defenses. Any further questions on federal jurisdiction? Any further questions on federal? All right. You'll have your three minutes rebuttal. Thank you, Your Honor. The court has no questions about constructive waiver of the right to remove? Not at this time, no. Thank you, Your Honor. Good afternoon. May it please the court. The district court here had independent grounds for rejecting the Attorney General's procedural challenges to Enbridge's removal notice. First of all, you're Ms. Loughran. Loughran. Loughran is the pronunciation representing Enbridge. Thank you, Your Honor. The first ground being that it was timely because it was filed within 30 days of defendant's receipt of the order, and the second ground being exceptional circumstances. That strikes me. I mean, it just baffles my mind that this could be within 30 days. I mean, how can the order set the time? Your argument in the rest of your brief is these are necessary elements of the claim that the Attorney General made in their original complaint. Correct, Your Honor. So the statute uses the word order, and it says from which it may be ascertained. And if the courts have explained, ascertained is with certainty. And what happened here was the Attorney General filed a complaint that was based on state law claims only. But it did the same thing in the governor's case. Yes, and what happened, Your Honor, after the filing of the governor's action was that the governor's action generated a significant foreign affairs controversy that came out subsequent to both complaints and was partial basis for the district court's order saying that there were significant issues. It seems to me lawyers ascertain all the time. They look at a case that's pled. They say to prove the plaintiff's case, you have to consider this federal statute, and thus it's removable. And they remove it. They don't wait for an order because in many cases you won't have two parallel cases. Correct, Your Honor. But here, as in Barrera, the question, Barrera had a reasonable basis for removing. The question in Barrera was whether, as my friend said, it was the interaction of facts and law. I don't think so. In Barrera, it was a bare bones complaint, unlike here. And in the Barrera case, it wasn't, you'll remember if you read Barrera, that the facts there were that the attorney was trying to figure out if they were in the FICA land. And when they figured it out, they immediately removed. None of that went on here. It was clear. I mean, if I look at the attorney general's complaint today, and let's say I agree with you on Grable, and I strap that on, I can make that determination without Judge Neff's order. That's irrelevant. Well, the order that was the remand order, what the court relied on, if you look at what the court's analysis and what court found important for the Grable analysis, was Canada's invocation of the transit treaty, which didn't happen until much later. So the other two statutes you don't think justify federal jurisdiction. You're just saying the treaty, the invocation of the treaty is what gives you federal jurisdiction. I'm not sure if you mean the Submerged Land Act. Yes. Yes, but Grable requires significant federal issues embedded in the complaint. And so, yes, we had briefed the Submerged Land Act and the Federal Preemption Pipeline Safety Act in the state court. What was not before the state court, and that did not come out until subsequently, was Canada's invocation of the treaty. Did you remove this within 30 days after Canada invoked the treaty? We removed, no, we did not. It was just outside the window. It was the 30 days that didn't come out. It is not a triggering event. The question is you have to have an order. I thought that's what you were arguing. No, no, no, what I was trying to say.  I thought you were arguing that the information you did not have at first, the new information was the treaty. Well, if that is information that allows the exception to apply, then you still only have 30 days after you know about the invocation of the treaty. And here, you waited much longer than that, right? No, well, again, it's a triggering event. It's amended complaints in order so that we fall within the order, which captured a lot of subsequent developments, including the invocation of the treaty and the finding that the treaty made, combined with the other federal issues, made it significant for purposes of framework. We're talking about information, and I think the Braddock case talks about the information that you did not have at the time that the 30-day clock to remove was running. And once you obtain the information, I see the exception as requiring you to file the motion to remove. Information. Removal within 30 days after you've obtained the information. Information that makes, it has to be one of the triggering events. Yeah, but you're saying you need a ruling by the district judge. Correct, Your Honor. Well, where is that in the exceptions that Congress made? Well, actually, the statute says after receipt by the defendant through service or otherwise, of an order from which it may first be ascertained that the case is or has become removable. So you have to also establish that order means an order not in this case. Right, Your Honor. I mean, what cases stand for that other than maybe Doe, maybe Green? I mean, but those cases have very specific requirements in them. Well, if you look at the plain language, it says, it doesn't limit it to a state court or federal court. The plain language says, receipt by the defendant of an order. And the common understanding, the term receipt. It is solid and unambiguous in the plain language. Actually, it's right here. It says from which it may be ascertained. And ascertained means with certainty. From which the case. What does it say certainty in the statute? I didn't see that. The statute of 446B3 says an order from which it may be ascertained. I know, I don't see certainty though. What certainty is defined as is ascertained. I'm sorry, ascertained. The common definition of ascertained is certainty. With certainty? Yes. I didn't see that. That is the common definition. And that's why the courts, including Barrera, have provided that. Now, keep in mind. I apologize. I cut you off. But what is the, so what, I understand that order, so let's say we would explain language of order. But what does the case law say about order from another case? I mean, am I right? You've got Doe, Green. Are there other cases? So what's important for Doe? Now, let me just, I'll respond to your question. I wanted to also address the Eighth Circuit's opinion. So if you look at the courts, they are consistent with the statute. They're saying that if a defendant receives an order in a particular case, then it's not an unrelated case that they learn about. That's not receipt of an order. What is important is it's a receipt by a defendant in a particular case. And what the courts are saying under the plain language, certainly a situation where they receive an order where it's the same defendant, same dispute, that that is an order within the main . . . Well, they also say superior court. There is the factual. The factual, it's true that it was a higher court, but it's not significant for purposes of the court's analysis, or more importantly, for purposes of the plain language. There's nothing in the plain language that says it has to be an order from the higher court. And here, in any event, it was the same party, same dispute . . . So did you remove in the governor's case in bad faith then? Because you didn't have something to ascertain? No, I think . . .  The point is, is that just as in Barrera, that it's . . . The test is not whether you have a reasonable basis. So in Barrera, they could have removed sooner, and we could have removed sooner, but the test is not whether there's a reasonable basis or a plausible basis. The question is whether it's unambiguous information. And this is such a unique case because . . . What did you have in the governor's case that you didn't have in this case? What we had in the . . . what came out subsequently, which was . . . When you removed a federal court in the governor's case, what information did you have that you didn't have in this case? We had basically the same information. Okay. We're not disputing . . . That was successful in this one. Correct. You didn't do it. But the reason why it was successful, Your Honor, is because of developments that came out after. If you look at the district court's order, what was important to her . . . Is that what we look at? I mean, isn't removal based upon the time of removal, whether it was a valid removal at that time? If I'm understanding what you're saying is, Barrera says the question is whether the initial pleading provides clear and unambiguous information. And . . . Judge Neff did not remand it back, and she considered subsequent developments. But normally we look at what the facts are at the time of removal, do we not?  Yes, Your . . . And here the facts are identical in the two cases. And for the life of me, I can't understand why you didn't remove this case and why you did remove the governor's case. Can you tell me why you didn't remove this? We did not remove . . . I think if you . . . Let me just explain. Just tell me, why didn't you remove this? We removed the governor's case because . . . I'll be honest with you. I know you removed the governor's case. I know. I'll tell you why. Because it's helpful . . . Why didn't you remove this case? Can I . . . If I could . . . It's helpful in answering, in explaining what the thinking is. That the governor set a deadline of six months of shutting down the pipeline. And that's what sparked the foreign affairs controversy. And that's what made it more than just a plain, you know, sort of reasonable federal dispute. It made it a significant . . . Why not remove them both at the same time? Well, we removed the governor's . . . Again, because we didn't have unambiguous information. As a practical matter, the state action was state. Everybody agreed, once we removed the governor's action, that it should be . . . The Attorney General's action should be state. When were you arguing preemption in this case, in the state court? Wasn't that before . . . So, yes, we raised preemption defenses as part of like a 12B6, the equivalent of a 12B6. We raised Pipeline Safety Act and the Federal Submerged Land Act . . . Well, you did it in September 16, 2019, with your motion for summary disposition. Correct. And, I mean, you litigated this case in state court. We litigated the questions of Pipeline Safety Act. We did not litigate . . . Well, you litigated federal preemption, too. And the circuit judge asked questions, wanted to be . . . the parties to be prepared for federal law preemption. And then after the hearing, you filed a supplemental brief on federal preemption. I mean, you litigated this in state court, right? We litigated the Pipeline Safety Act. We did not litigate the transit treaty and the foreign affairs issues because that, again, came out subsequent. I know, but you're allowed to litigate for a while in state court before you decide that, oh, I think I want to remove to federal court? Well . . . I don't think that's what Congress set up here. There's two ways of looking at it. One is if you waive it after you have unambiguous information and, therefore, are knowingly waiving your right to a statutory right to removal. And that way, we remove within 30 days. But even if you look at it under the case law of what amounts in a state court action to a waiver, here it was only defensive actions. Yes, we filed what was something that was required under the state rules. Basically, effectively, the same thing as the 12B6 motion dismissed. The courts have said that is not a waiver. You're arguing those statutes now allow you under Grable to have jurisdiction in our court. That plus the international treaties. So the whole thing hinges on the international treaty because without the international treaty, you lose, right? Well, I think that what we won on was her analysis was the international treaty. I know what you won on. I'm asking a different question.  Are we wasting our time analyzing the Pipeline Safety Act and the whatever the other one is? Federal Submerged Land Act. Yeah, Federal Submerged Land Act because those you couldn't have a substantial federal question on. Otherwise, you would have removed it at the outset when you filed your 12B6. Well, just to be clear, the Federal Submerged Lands Act as part of the Grable analysis shows that it's embedded in the complaint. Okay, so you could have figured that out with certainty in your mind at the time the complaint was filed. Yes, that there was briefing in the state court thus revealing that we were aware of the Federal Submerged Land Act and that we have the Pipeline Safety Act. You didn't know anything about the treaty? You didn't look up, hey, maybe there's a treaty that goes across the country? Your Honor, it's such a unique treaty. It only covers four or five pipelines and no, there was no briefing in the state court at all about the treaty. It's something that Canada is a party to and Canada was the one who made the decision to invoke the treaty. Okay, but once they invoked the treaty, why didn't you remand to federal court at that time within 30 days of their invocation of the treaty? Because one, it's not a triggering event. Why not? I think that's the only distinction you have here between this case and the governor's case. If that doesn't trigger it, I don't know what would. So it's an order or other paper. I'm not quite buying that because it is a legal ruling by a district judge and you're saying that I did not have grounds to remove to federal court until I had a ruling by a court. I don't think that's the standard of removal. The order as I understood it as a district judge in 1446B3 is an order like dismissing a party such that you now have diversity or something. That's traditionally what we think of as orders. We don't think of an order in an unrelated case, a different case that denies the motion to remand. Otherwise, that's going to happen in America all the time and it starts a new 30-day clock, arguably. No, Your Honor, because the way the courts have interpreted it, and again, consistent with the plain language, it's receipt by the defendant of the order. It's not external orders that are unrelated parties and that's exactly what the circuit said. We read 1446B3 in context. We don't read it out of context and what orders means in that context is like an order of a district court that for the first time creates federal jurisdiction. And that happens all the time by a state court, I'm sorry, that creates federal jurisdiction. But if that were true, you wouldn't have the other circuits that have recognized that there are unique circumstances where an order in a federal case, provided that it's the same parties, the same dispute, and that order provides a basis for removability and it makes good sense because... This isn't the same parties. Well, Your Honor, it's parties or privies because the Attorney General is representing the Governor. She's filing this lawsuit on behalf of Michigan. The other action was filed by the state of Michigan. These are the same parties or they're privies. I don't think there's any question about that. I, for one, am not buying your argument, but you're also arguing there's equitable considerations that we can make... Correct, Your Honor. ...the 30 days set by Congress, and this is also not a procedural rule of the courts. It's not a rule of civil procedure where I think we have a little more leeway to invoke equity of our own rules. This is a congressional deadline, and also Congress not only made the deadline, but they also made specific exceptions to the deadline. And here you want us to invoke principles of equity to excuse noncompliance with deadlines set for Congress. Now, tell me why we have the authority as judges to get around the mandates of Congress. So Section 1447 by its terms mandates a remand when there's a lack of subject matter jurisdiction. Otherwise, it can be waived, and if it can be waived, it's pretty clear, and my friend agrees, that it's a procedural requirement, not a jurisdictional requirement. And therefore, the Eleventh Circuit and the Fifth Circuit have recognized exceptional circumstances. Yes, in most cases, it's going to go back. The question, though, is, as the Eleventh Circuit and the Fifth Circuit have said, there can be sort of rare circumstances that would allow the court to retain the case even though, you know, assuming it's not timely filed. The language says we shall remand it? Well, the language also says 14, it says, if you look at 1447C, it says remand for lack of subject matter jurisdiction. That's the only circumstance where it mandates. And I think if the court could provide the language you're referring to, if any time before final judgment, and this came up in the Caterpillar case, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. That's the only circumstance where it's mandated. But it says you shall remove within 30 days, so if you don't comply with that, then they shall remand it. Well, actually, it doesn't, 1447 doesn't dictate that. 1447 dictates a remand when, there was no reason to have that language. I'm going to have to ask you to discuss this in detail unless you've read it. Did you read the Attorney General's cites in their brief, My Case in Gray, where I discussed this? Have you read that? I don't remember the exact language of the thing. Then I'm not going to ask you about it. Go ahead. I go through all this in gray. I was a district judge, so these guys can ignore it all they want. I see, I see. So you're referring, I'm sort of confused because I don't remember a Sixth Circuit. But I reject the argument that you could use equitable tolling in this context. And I specifically discussed the language you're talking about in 1447. But go ahead. You've still got two you can appeal to, so keep going. Your Honor, I apologize. District court opinions are not binding on us. Or him, for that matter. District court decisions are not binding on district court opinions. He might file his own opinions, I don't know. The only question, though, whether the court, again, we have the Fifth Circuit and the Eleventh Circuit recognizing, and then you'd be creating a circuit split. I know you're out of time, but would you like to address the federal jurisdiction issue as well? Sure, Your Honor. And what makes this case different from your sort of ordinary preemption defenses is that you have the Federal Submerged Land Act, which by its express terms burdens the title of the state. And therefore, as the district court found, in order to prove, it's almost to the T like Grable, because in that case it was a quiet title and they had to show that they had ownership and that it wasn't burdened by federal law. And the same being true here. If you look at the language of the express statute, it provides that the federal government releases title except when dealing with international relations. So it doesn't even matter. We're already dealing with international relations, whether you look at the transit treaty or not, as well as commerce, which is the Pipeline Safety Act. And so the state's title is expressly burdened by federal law, and therefore it brings it within Grable. And the key question, again, for the district court's analysis was whether it was significant. And the component that made it significant was Canada's actions. And I don't think there's any dispute that this is a very unique case, because once Canada learned about the state's efforts to shut down this pipeline, they became very alarmed since two of their provinces are dependent upon this pipeline. And the state wanted this pipeline shut down, and that caused a foreign affairs controversy, which all came out, and which is relevant actually for all of the issues. In Grable, in order to prevail or to adjudicate that cause of action, they had to prove, somebody had to prove that the IRS had not complied or whatever, right? Right. As an element. Right. What is the element here? What does the Attorney General have to prove? What, that it's not burdened or there wasn't? I'm just trying to fit this into the – you say it's like Grable, and I guess I'm struggling to see that. Well, yes. So, Your Honor, so as my friend said, that they believe they have ownership, full ownership to the bottom lands, and that it's not burdened by federal laws. I understand what they're saying, that it's – there's nothing that burdens – I have a hard time expressing it other than using the word burden. And the question in Grable is whether it's significant and disputed. Yes, I know they have arguments that there may be exceptions. But does the Attorney General have to prove affirmatively that Article II of the treaty doesn't apply or something? No, I think that's – Where there's some element that somebody is proving that involves federal law.  And this is what – to be honest, this is what came out a little bit clearer in the governor's complaint. It wasn't as clear, but that they have to prove for their claims, at least one of their claims, that they are the sole owner of the bottom lands. And that is a – that's a – well, the burden by federal law. But why isn't that just an affirmative defense? Because of – because of the Submerged Lands Act. If we didn't have the Submerged Lands Act, which by its expressed terms, refers to Congress retaining the title over the bottom lands for international affairs of commerce, if we didn't have that, it would be a preemption fence. But we have the fact that they – it is burdened, and they have to prove in order to, you know, in order to prevail on their claims that it's not burdened. And then we also have the Foreign Affairs Common Law Defense, which the Fifth Circuit decision is, you know, virtually identical. The Ninth Circuit's opinion, written by Judge Kaczynski, is very distinguishable. If you look at Judge Kaczynski's opinion, he was relying on the fact that these were banana workers, and the defendants were arguing that, you know, these tort claims would, you know, may impact foreign affairs. Nothing like this case, where you have a foreign sovereign, as you did in the Fifth Circuit Peru case. Any further questions? No, thank you. I'll let you – just to sum it up, I'll let you have a minute. Okay, thank you, Your Honor. Just to emphasize the very uniqueness of these facts, because of the fact that we have the State filing two complaints, and the subsequent developments that came out after the second complaint that were the basis of the district court's grieval findings. Thank you, Your Honor. All right. Rebuttal, Mr. Bach. Three minutes. Thank you, Your Honor. I was just going to raise a few quick points. Ms. Loughran asserted that this became a foreign affairs controversy, and that was why the nature, the removability changed. I'll just quickly point out, and this is in our chart, page 51 of our brief, Canada first filed an amicus brief in the governor's case April 27th, 2021, nearly eight months before Enbridge removed this case. Canada filed a supplemental amicus brief October 4th, 2021, more than two months before Enbridge removed this case. And Canada formally invoked the dispute resolution provision under Article IX with the United States of the treaty. We have a typo. Our brief says June 1st, 2021. It was actually October 21st, but still just shy of 60 days before Enbridge removed this case. So it still wasn't in the 30-day window? Not close, Your Honor. And Ms. Loughran just argued that the Federal Submerged Lands Act is not a preemption defense. She's saying it burdens the State's claim, because I think Enbridge is being careful not to say it preempts the State claim, but that's what it is. But as Judge Griffin noted, they raised that as a preemption defense in September of 2019, 26 months before they removed. Dispute resolution procedures under the treaty, is that still a live issue? It is still a live issue, Your Honor, but it is not relevant for the purposes of establishing Federal court subject matter jurisdiction. I understand. I'm just curious whether it depends on whether this case is in, whether that will depend on whether this case is in State or Federal court. I don't know if that depends on it, Your Honor, but I would point out, and I think very little has probably happened in those dispute resolution talks, but I will note, simply put, that nothing in the treaty, and we said this in our reply, nothing in the treaty takes away the right of litigants, property owners, to bring causes of action such as this. They're expressly preserved. The treaty only applies to the parties, meaning the United States and Canada. It provides no cause of action. And certainly, as we set forth in our reply, the Federal government knows how to do that when it wants to. It chose not to in this treaty. Also, I'm not sure if it impacts the issues that we're talking about, but I recognize that Enbridge has their own plaintiff's case pending in Federal court right now, involving the same issues, other than they also want an injunction, I guess, against the governor. So if we grant the State relief here and remand it back to the Ingham Circuit Court, we're going to have two parallel cases going on, will we not? Respectfully, Your Honor, not for long, and they actually are distinct cases for two reasons. First and foremost, as we set forth in our brief, Enbridge and the governor filed cross-dispositive motions that were fully briefed and have been pending before the district court since early April 2022. So in about a month, they'll have been pending for two years. But the governor and the Department of Natural Resources director asserted their 11th Amendment immunity. Enbridge has sought claims in Federal court against State officials in derogation of 11th Amendment immunity. We believe that's going to be dismissed. But more importantly, there's an important distinction that I need to make sure is not lost. When you say not for long, you're saying not for long because you think the district court is going to rule and rule in your favor. I certainly hope so, Your Honor. If not, we'll be before this court again on an appeal, likely. But the other issue is there is an important distinction that should be noted. The governor and the DNR sued in their capacity as being the signatories of the 1953 easement agreement. It was an action, and that was voluntarily withdrawn. But Enbridge's claim against them. Why was it voluntarily withdrawn? They lost remand. They didn't want to have a forum battle, and so they voluntarily withdrew after the case was not remanded. And so Enbridge has tried to paint this as forum shopping by the State, and that was the last point I wanted to make. They want a forum battle, but let's see. That would have stayed in Federal court where their own Enbridge's case is in Federal court. This one, go back. I mean, we are going to have a forum, potentially a forum battle, aren't we? To point out, Your Honor, the Attorney General's case had been substantially litigated in State court when the governor filed in the same State court. Enbridge removed that one, but not this one, and countersued the governor in Federal court creating the forum battle. The governor moved to remand. The only reason this case was stayed was to seek remand to get them reconsolidated in State court. When the governor did not prevail on the remand motion, she almost immediately withdrew the claim and said, we don't want a forum battle. We want the Attorney General's case to go forward because it's been awaiting a final decision on the merits on dispositive motions for quite some time. Enbridge then removed this case. But the point is, I also just need to quickly address this notion that the governor and the Attorney General are privies. They're not privies. These are two separate cases. The governor makes her own litigation decisions. The Attorney General makes her own litigation decisions. And the important distinction between the cases is, as I said, the governor's case is premised on a contract, to which the Attorney General is not a signatory and could not bring an enforcement action. That's a case about the termination provision of the easement itself. This case is essentially akin to a parents patriae case. It's the Attorney General on behalf of the people of the State of Michigan bringing an enforcement action under Michigan law. And so there are those significant differences. So why doesn't that cut in their favor on the removal, then, if they're significantly different? I thought the complaints were basically the same. It would have been clear that they were both removable. You're saying they're not the same case, they're different. There were some circumstances in the governor's case that led to the removal, you know, Eureka, and then this case. I didn't mean to be unclear, Judge Albandian. The legal issues are similar, but the basis for the lawsuits are different. The governor's is a contract action that will turn on the termination provision of the 1953 easement agreement. The Attorney General's case is, you know, is not based on the contract. So then why would it be a forum battle if it's two different cases? Wouldn't you keep them both alive? Well, but the legal issues would certainly be similar, and so the governor voluntarily dismissed. And, again, when the governor did that, it rendered the district court's interlocutory order null and void. And that case had already been dismissed when Enbridge tried to remove this case. Unless the court has any other questions for me, that's all I have. All right. Thank you, counsel. Thank you, Your Honor. Thank you for your arguments. The case will be submitted, and you may adjourn the court.